UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEJANDRO LORENZO-ZAMORANO, CARLOS GUMARO BONILLA-HERNANDEZ, FERNANDO CRUZ-MAQUEDA, MANUEL CRUS-SANTIAGO, EUGES HERNANDEZ-GONZALEZ, RIGOBERTO JUAREZ-MELAGAREJO, JOSE LUIS LOPEZ-HERNANDEZ, MARTIN, LOPEZ-HERNANDEZ, ISRAEL LOPEZ-ZAMORA, JOSE LORENZO-ZAMORANO, FELICIANO ORTIZ-MAQUEDA, GABRIEL REYES-MARTINEZ, MARCELINO ZAMORANO-MARTIN, MIGUEL ZAVALETA-TEJEDA, individually and on behalf of all other persons similarly situated,

    Plaintiffs,

vs.    Case No. 2:10-cv-657-FtM-29DNF

OVERLOOK HARVESTING COMPANY, LLC, BENTLEY BROTHERS, INC.,

    Defendants.
_____

**OPINION AND ORDER**

On August 9, 2011, United States Magistrate Judge Douglas N. Frazier submitted a Report and Recommendation (doc. #30) to the Court recommending that plaintiff's Motion for Declaration of a Class Action (doc. #24) be granted. Defendants filed Objections (doc. #31), to which plaintiffs filed a Response (doc. #34). For the reasons set forth below, the Court adopts the Report and Recommendation in part but denies the motion for class certification.

I.

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Powell, 628 F.3d 1254, 1256 (11th Cir. 2010). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also United States v. Farias-Gonzalez, 556 F.3d 1181, 1184 n.1 (11th Cir. 2009). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

II.

This matter is before the Court on a three-count Complaint (doc. #1) filed by fourteen nonimmigrant alien workers who participated as H-2A workers[1] harvesting citrus for defendant Overlook Harvesting Co., LLC (Overlook Harvesting) during the 2007-08 and/or the 2008-09 Florida citrus harvests. Count I alleges

---

[1] See Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228, 1332-33 (11th Cir. 2002) for an overview of the H-2A program.

that defendants violated the Fair Labor Standards Act by: (1) failing to pay plaintiffs the required minimum wage for every compensable hour of labor performed during the two harvests; (2) failing to supplement plaintiffs' piece-rate earnings so as to raise their wages to a rate equal to or exceeding the minimum wage; (3) failing to credit plaintiffs with all compensable hours worked, including time each spent watching an instructional videotape relating to their jobs; and (4) failing to fully reimburse plaintiffs for expenses incurred primarily for the benefit of defendants. Count II alleges that defendants breached employment contracts which were embodied in the H-2A clearance orders by providing terms and conditions of employment that were materially different from those described in the clearance orders, including: (1) not providing picking sacks at no cost; (2) not paying at least the applicable adverse effect wage rate; (3) not paying the Florida minimum wage for each hour employed; (4) not providing inbound transportation and subsistence expenses as required by federal regulations; (5) not maintaining payroll records accurately recording the hours worked; and (6) furnishing wage statements which did not accurately show the number of hours actually worked and the number of tubs harvested and omitting data as to the numbers of hours offered. Count III alleges that defendants breached the Florida Minimum Wage Provisions of the Florida Constitution by: (1) failing to pay plaintiffs the required minimum

wage for every compensable hour of labor performed during the two harvests; (2) failing to supplement plaintiffs' piece-rate earnings so as to raise their wages to a rate equal to or exceeding the minimum wage; (3) failing to credit plaintiffs with all compensable hours worked, including time each spent watching an instructional videotape relating to their jobs; and (4) failing to fully reimburse plaintiffs for expenses incurred and facilities primarily benefitting defendants.  Plaintiffs seek class certification as to Counts II and III.

The Report and Recommendation accurately and without objection sets forth the underlying facts, the status of a related case filed in the Tampa Division, and the applicable law concerning class certification.  The Court adopts these portions of the Report and Recommendation without further comment.  Defendants do not dispute that the requirements of Federal Rule of Civil Procedure 23(a) have been satisfied, as set forth in the Report and Recommendation, and the Court agrees that the requirements of Rule 23(a) have been satisfied.

Defendants do object, however, to the Report and Recommendation's analysis of Rule 23(b)(3), which provides that a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Defendants argue that the magistrate judge was required to perform a "rigorous analysis" of the predominance and superiority requirements, Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1266 (11th Cir. 2009) ("A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." (citation omitted)), but failed to do so. When properly analyzed, defendants assert that the claims in Counts II and III require individualized proof that will predominate over any arguable class-wide claims.

The Court agrees with defendant's objection that the Report and Recommendation is not sufficiently detailed in its analysis of predominance and superiority. Therefore, the Court will supplement the Report and Recommendation with its analysis of these issues, set forth below.

**A. Predominance of Common Issues of Fact and Law:**

The Eleventh Circuit has recently summarized the predominance principles as follows:

> Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. If after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, [their] claims are not suitable for class certification under Rule 23(b)(3). In practical terms,

while it is not necessary that all questions of fact or law be common, the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.

To assess the impact of a common question on the class members' claims, a district court obviously must examine not only the defendant's course of conduct towards the class members, but also the class members' legal rights and duties. A plaintiff may claim that every putative class member was harmed by the defendant's conduct, but if fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed, or if the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions may well be submerged by individual ones. This principle emerges clearly from our case law and that of other circuits. See, e.g., Vega, 564 F.3d at 1272 ("Without the existence of a common contract, of course, there can also be no commonality with respect to whether T-Mobile's conduct ..., even if undertaken pursuant to a uniform policy, constituted a breach of every class member's particular employment contract."); Gene & Gene LLC v. BioPay LLC, 541 F.3d 318, 326-29 (5th Cir.2008) (reversing class certification predicated on defendant's "common course of conduct, fax blasting," where the district court "did not explain how th[is] common course of conduct ... would affect a trial on the merits," and where a trial in fact would require individualized proof as to whether each class member had consented to receipt of faxes); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir.1998) (reversing certification based on defendant's alleged breach of franchising agreements, where the agreements variously supported or undermined the plaintiffs' theory of liability); Sprague v. Gen. Motors Corp., 133 F.3d 388, 398 (6th Cir.1998) (en banc) (reversing certification of claim by General Motors retirees that company breached their contracts by reducing their benefits at the same time and in the same manner, where each "contract" arose from an individual "side deal" with the company).

Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1170-71 (11th Cir. 2010)(internal

citations and quotation marks omitted).  To determine whether common questions of law or fact predominate, the Court is required to examine the elements of the causes of actions set forth in the Complaint.  Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011); Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1260 (11th Cir. 2003).

   **(1) Breach of Contract - Count II:**

"For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  Vega, 564 F.3d at 1272.  The existence of a contract is not at issue in this case, and the contract consists of the "clearance orders"[2] which apply to all putative class members. The contract is therefore identical for all plaintiffs and putative class members, a situation which "best facilitates," Sacred Heart Health Sys., 601 F.3d at 1171, but does not guarantee class certification.  Sacred Heart Health Sys., 601 F.3d at 1176-77.

   There are six alleged breaches of the contract, some of which are common and easily applicable to all putative class members. Thus, whether defendants were required to provide picking sacks at no cost, or provide inbound transportation and subsistence expenses as required by federal regulations, are common issues whose resolution is applicable to all putative plaintiffs.  The other

---

   [2]Arriaga, 305 F.3d at 1233 n.5.

four alleged breaches, however, involve highly individualized consideration of facts unique to each putative plaintiff. Thus, while it is clear that defendants must pay at least the applicable adverse effect wage rate and the Florida minimum wage for each hour employed, whether defendants did so requires an examination of the individual plaintiff's work hours, productivity, and records. Similarly, while the requirement that defendants must maintain payroll records accurately recording the hours worked applies to all putative plaintiffs, whether defendants did so requires an individualized examination of the records as they relate to individual plaintiffs. Finally, whether defendants furnished wage statements which did not accurately show the number of hours worked and the number of tubs harvested, and omitted data as to the numbers of hours offered, also involves an individualized examination of the facts related to each putative plaintiff.

The third element of the breach of contract claim is damages. "Individualized damages issues are of course least likely to defeat predominance 'where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods.'" <u>Sacred Heart Health Sys.</u>, 601 F.3d at 1179 (internal quotation and citation omitted). No such device is apparent in this case. Here, the Complaint seeks actual damages and the individual circumstances of each putative plaintiff would need to be considered.

To determine the issues of breach and damages will require analysis of weekly work records for each putative plaintiff. Defendants proffered that for the 2007-08 harvest season, it employed 329 persons for a 31-week season; for the 2008-09 harvest season, it employed 355 persons for a 32-week season. Plaintiffs were paid a piece-rate for citrus harvested, and worked at various groves where the piece-rates were different. The volume of citrus each worker harvested each day and week is material to the calculation of whether he or she was paid at the proper hourly rate. Individualized consideration is required for most of the issues related to breach of contract and resulting damages.

**(2) Florida Minimum Wage - Count III:**

As noted earlier, Count III alleges that defendants breached the Florida Minimum Wage Provisions of the Florida Constitution by: (1) failing to pay plaintiffs the required minimum wage for every compensable hour of labor performed during the two harvests; (2) failing to supplement plaintiffs' piece-rate earnings so as to raise their wages to a rate equal to or exceeding the minimum wage; (3) failing to credit plaintiffs with all compensable hours worked, including time each spent watching an instructional videotape relating to their jobs; and (4) failing to fully reimburse plaintiffs for expenses incurred primarily for the benefit of defendants. These four alleged violations are virtually identical to the alleged violations in the Fair Labor Standards Act claim in

Count I. Count III clearly requires an examination of every compensable hour of labor performed by each individual, and an individualized calculation of whether a supplementation of the individual's piece-rate earnings was necessary. While the issue of whether watching an instructional videotape is compensable is common to all plaintiffs, the Complaint does not limit the failure to credit plaintiffs with all compensable hours worked to that event. Additionally, failing to reimburse plaintiffs for expenses incurred requires an individual examination of the expenses for each plaintiff to determine what the expenses were for and the amount of the expenses. Defendants' proffer as to the two seasons applies equally to the claims in Count III.

In sum, the Court finds that there are indeed some issues of fact and law which are common to all putative plaintiffs. The Court finds, however, that the remaining individualized issues predominate over the common issues.

**B. Superiority of Class Action:**

The second prong of Rule 23(b)(3) requires a court to determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The focus of this analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir.

2004). The predominance analysis has a "tremendous impact on the superiority analysis ... for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." Id. The converse is also true: the less common the issues, the less desirable a class action will be as a vehicle for resolving them. Sacred Heart Health Sys., 601 F.3d at 1183-84. Because the Court must determine on an individual basis whether there were breaches of the contract with regard to payment of wages and because the Court is unable to do so on a class-wide basis or with a relatively simple methodology, a class action is not a superior proceeding.

After reviewing the Report and Recommendation, the Court will adopt those portions set forth above. The Court declines to accept the recommendation of class certification in the Report and Recommendation, and based upon the Court's supplementation set forth above, finds that plaintiffs have not satisfied the requirements of Rule 23(b)(3).

Accordingly, it is now

**ORDERED:**

1. The Magistrate Judge's Report and Recommendation (Doc. # 30) is **accepted and adopted in part and rejected in part**, as set forth above.

2. Plaintiff's Motion for Declaration of a Class Action (Doc. #24) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   14th   day of September, 2011.

*[signature: John E. Steele]*

JOHN E. STEELE
United States District Judge

Copies:
Magistrate Judge
Counsel of Record
DCCD